# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2020-SA-01333-COA

**POPLAR SPRINGS NURSING CENTER**                    **APPELLANT**

**v.**

**MISSISSIPPI DIVISION OF MEDICAID AND**            **APPELLEES**
**DREW SNYDER, IN HIS OFFICIAL CAPACITY**
**AS EXECUTIVE DIRECTOR OF THE**
**MISSISSIPPI DIVISION OF MEDICAID**

| | |
|---|---|
| DATE OF JUDGMENT: | 11/09/2020 |
| TRIAL JUDGE: | HON. DENISE OWENS |
| COURT FROM WHICH APPEALED: | HINDS COUNTY CHANCERY COURT, FIRST JUDICIAL DISTRICT |
| ATTORNEYS FOR APPELLANT: | JULIE BOWMAN MITCHELL PHILIP JOSEPH CHAPMAN |
| ATTORNEYS FOR APPELLEES: | JANET McMURTRAY MAUREEN BURKE SPEYERER SAMUEL GOFF |
| NATURE OF THE CASE: | CIVIL - STATE BOARDS AND AGENCIES |
| DISPOSITION: | AFFIRMED - 04/19/2022 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**BEFORE BARNES, C.J., McCARTY AND SMITH, JJ.**

**McCARTY, J., FOR THE COURT:**

¶1.     Unsatisfied with a series of cost adjustments by the Division of Medicaid, a nursing home sought review in chancery court. The court ruled it did not have subject matter jurisdiction because the nursing home had not exhausted its administrative remedies. Finding that the nursing home did not timely seek review of the cost adjustments, we affirm the dismissal for lack of subject matter jurisdiction.

## FACTS AND PROCEDURAL HISTORY

¶2. Poplar Springs Nursing Center is the current operator of a nursing facility located in Meridian, Mississippi. The nursing home began operating in this capacity after a change of ownership in 2005.

¶3. The Division of Medicaid requires that all nursing facilities file annual cost reports that represent all expenses by each facility. The Division of Medicaid uses this cost report to establish a per diem rate that is paid to each facility for Medicaid-eligible residents cared for in the facility.

¶4. Poplar Springs was a new provider in 2005, so it had no previous history of cost reports. As a result, the state plan in effect in 2005 stated that Poplar Springs was granted the maximum-allowed per diem rate until the change-of-ownership cost report was submitted and rates were calculated. This per diem rate sets the rate retroactively after the actual cost is determined. The first change-of-ownership cost report covered August through October of 2005.

¶5. In December 2006, the Division of Medicaid conducted a "desk review"[1] of the change-of-ownership cost report. Poplar Springs did not object to the findings of the desk review. Three years later, the agency retained an independent auditor to conduct an audit of

---

[1] The Administrative Code governing the Mississippi Division of Medicaid Rule 1.3(E) explains that "[p]eriodically the Division of Medicaid staff may conduct desk reviews of Administrative Claiming services," and "[t]hese desk reviews include, but are not limited to, the analysis of required documentation and various reports." 23 Miss. Admin. Code Pt. 301, R. 1.3(E) (2012). These desk reviews do not include face-to-face interviews, unlike on-site visits.

the change-of-ownership cost report. This audit resulted in new proposed cost adjustments. Poplar Springs retained a certified public accountant to respond to the proposed adjustments. The independent auditor sent a letter to Poplar Springs' accountant in 2009, stating that Poplar Springs "will receive a copy of the final report from the MDOM with instructions on how to proceed should you wish to pursue these issues further."

### *The 2009 Findings*

¶6. The Division issued its first decision in June 2009. A letter detailing the findings was sent to Poplar Springs, via its CPA, by certified mail. The letter informed the nursing facility of its right to request an appeal within thirty days of receiving notice of the adjustments and informed Poplar Springs that the audit would be final in thirty days absent an appeal. The nursing home did not seek an administrative appeal of this June 2009 letter.

### *The 2011 Findings*

¶7. The Division issued its second series of findings in March 2011, and contained certain rate adjustments for Poplar Springs relating to an amended audit. The 2011 letter again explained how the nursing facility would have thirty days to request an appeal of the adjustments. Critically, the 2011 letter also explained how the adjustments made in 2009 were now final:

> In accordance with Medicaid policy, **you have thirty (30) days from your receipt of this letter to appeal these changes**. **In regards to the other adjustments that were not revised, your thirty (30) day period to appeal has expired.** If we have not received a response from you within (30) days of receipt, **the Division of Medicaid will deem the audit findings final** and proceed to adjust the facility's reimbursement rates as appropriate. Any request

for a hearing must be made in accordance with Medicaid Policy Section 7.06[.]

(Emphasis added).

¶8. Poplar Springs took no action after receiving this letter and did not seek administrative review of the findings. As a result, the cost adjustments became final and were then used to calculate the new per diem rate for the nursing facility.

### The 2013 Findings

¶9. The Division issued its third decision in March 2013. The 2013 decision involved only rate calculations based on the previously uncontested rate adjustments based on the 2009 and 2011 decisions. The 2013 rate calculations letter revealed the Division had overpaid the nursing center in the amount of $996,000. The nearly one-million-dollar amount was subject to recoupment by the Division of Medicaid.

¶10. Only then did Poplar Springs jump into action. In April 2013, the nursing home timely filed an appeal and requested a hearing regarding the rate adjustments from the March 2013 Medicaid decision. However, Poplar Springs used this opportunity to attempt to include a review of the 2009 and 2011 rate adjustments and their underlying cost adjustments.

¶11. The Division of Medicaid denied Polar Springs' requests on administrative appeal of the rate adjustments from June 2009 to March 2011, finding them time-barred. However, it *did* allow the nursing home to pursue an administrative appeal of the March 2013 rate calculations.

4

¶12. The nursing center alleged there was no final determination made by the Division regarding the rate adjustments in 2009 and 2011 until the 2013 letter, which Poplar Springs argued finalized the cost adjustments. The agency declined to review the 2009 and 2011 adjustments. Unsatisfied with going forward with only an administrative hearing relating to the 2013 rate calculations, Polar Springs requested that the Division stay the administrative hearing while it sought review from the chancery court as to whether it could contest the 2009 and 2011 adjustments. The agency consented to this process and agreed to a stay.

¶13. Once in chancery court, the Division of Medicaid sought to dismiss for lack of subject matter jurisdiction. The Division of Medicaid argued that the nursing center failed to exhaust its available administrative remedies by failing to timely appeal the 2009 and 2011 cost adjustments, so the chancery court lacked subject matter jurisdiction.

¶14. The chancery court conducted a hearing. To some extent, Poplar Springs protested that it had not received the 2009 letter, although this argument was not supported by the testimony of a witness or an affidavit. Regardless, when questioned by the chancery court, the nursing home did admit to receiving the 2011 letter, which clearly notified it of the 2009 changes:

> [THE COURT]: But you-all, I mean you got the second one, so you knew about the [2009] decision.
>
> [COUNSEL]: We did, but that - - well, at that point, *we would have learned about it, yes*, but we didn't know what those adjustments were other than the amended adjustments in that new audit report. There was never - - they were never provided an opportunity to appeal even though

they got it, Your Honor. That letter stated the old adjustments of these three new ones are unappealable at this time.

(Emphasis added). Poplar Springs further conceded it took no action in 2011.

¶15. The chancery court granted the Division's motion to dismiss, holding that Poplar Springs had failed to seek an administrative review in either 2009 or 2011. This failure to exhaust administrative remedies required the chancery court to dismiss the case for lack of subject matter jurisdiction.

**STANDARD OF REVIEW**

¶16. "In reviewing appeals taken from chancery court rulings, we apply a limited standard of review in that the factual findings of the chancery court, if supported by substantial evidence, will not be disturbed unless the chancery court abused its discretion, applied an erroneous legal standard, or its findings are manifestly wrong or clearly erroneous." *Rucker v. Miss. Dep't of Revenue*, 281 So. 3d 253, 254 (¶6) (Miss. Ct. App. 2019). "However, questions of law receive a de novo review." *Id*.

**DISCUSSION**

¶17. Poplar Springs claims two errors on appeal. The first focuses on whether the Division of Medicaid deprived it of due process by the denial of the request for an administrative hearing on the 2009 and 2011 cost adjustments. Second, the nursing home claims the denial of its request to appeal the 2009 and 2011 letters was "contrary to the law, arbitrary, capricious, and against the substantial weight of the evidence."

6

¶18.    The chancery court did not reach the merits of those alleged errors, as it ruled that it did not have subject matter jurisdiction.  "As a threshold inquiry, subject matter jurisdiction must be determined before the court has authority to decide whether plaintiff has stated a claim upon which relief may be granted." *Luckett v. Miss. Wood Inc.*, 481 So. 2d 288, 290 (Miss. 1985).  "When a plaintiff's allegations of jurisdiction are questioned, the plaintiff bears the burden to prove jurisdiction by a preponderance of the evidence." *Schmidt v. Cath. Diocese of Biloxi*, 18 So. 3d 814, 822 (¶14) (Miss. 2009).

¶19.    The Division of Medicaid has established administrative remedies that must be followed by providers who participate in the Medicaid program.  Section 7.06 of the Provider Policy Manual providing for administrative hearings states in pertinent part:

> [A]dministrative hearings shall be available to providers of services participating in Mississippi Medicaid. These hearings are for providers who are dissatisfied with final administrative decisions of DOM relating to disallowances . . . or matters relating to payment rates or reimbursement if not previously considered by DOM under Public Notice or Public Hearing Procedures.

Additionally, section 7.06 of the Provider Policy Manual provides that "[w]ithin thirty (30) calendar days after a final administrative decision has been made, the provider may request a formal hearing."  The Policy Manual further states that "[u]nless DOM receives a timely and proper request for a hearing from the provider, the final administrative decision rendered by the DOM shall not be subject to review."

¶20.    Therefore, pursuant to these administrative regulations, a provider must notify the Division of Medicaid within thirty days of issuance of a final administrative decision that it

7

seeks an administrative review of a decision by the Division of Medicaid. The Policy Manual goes on to state that if a timely request is received, an administrative hearing will be conducted before an administrative law judge. Once the administrative hearing process has concluded and a final decision on the issue has been entered, a provider may then file an appeal in the chancery court. An appeal can be made to the chancery court only after a final decision has been made by the Executive Director regarding the matter.

¶21. In a recent decision by this Court, we held that the failure to exhaust administrative remedies by seeking a timely appeal will result in a lack of subject matter jurisdiction. *Rucker*, 281 So. 3d at 255 (¶12). In *Rucker*, a taxpayer sought judicial review from the chancery court of a board of review's denial of his request for a hearing to challenge a tax assessment. *Id.* at 254 (¶¶2-3). The taxpayer's appeal was denied by the board of review as being untimely. *Id.* at (¶3). Like the Division of Medicaid did in this case, the Department of Revenue argued the petitioner "did not properly exhaust the administrative appeal process and that therefore the chancery court did not have the jurisdiction to properly hear his claim." *Id.*

¶22. This Court agreed, finding that the taxpayer should have appealed to the Board of Review first and then to the Board of Tax Appeals. *Id.* at 255-56 (¶12). Since he did not, the decision was not subject to review since "[i]t is well settled that a complainant must exhaust the administrative remedies available to him before resorting to the courts for resolution of his dispute." *Id.* at 255 (¶12) (internal quotation mark omitted) (quoting

8

*Fillingame v. Miss. State Fire Acad.*, 217 So. 3d 686, 688 (¶13) (Miss. Ct. App. 2016)). As a result, this Court held that "the chancery court correctly found that it lacked subject-matter jurisdiction[.]" *Id.*; *see Fillingame*, 217 So. 3d at 687 (¶2) (holding that the circuit court correctly found it lacked subject matter jurisdiction where a firefighter trainee did not exhaust his administrative remedies before seeking relief from the circuit court); *see also Alford v. Miss. Div. of Medicaid*, 30 So. 3d 1212, 1222 (¶32) (Miss. 2010) (finding that when a wife did not exhaust administrative remedies, the chancery court did not have jurisdiction to increase certain disability benefits).

¶23. Here, the nursing facility did not follow the administrative procedure for a decision by the Division to be reviewed in the chancery court. It has been long established that "[w]here an administrative agency regulates certain activity, an aggrieved party must first seek relief from the administrative agency before seeking relief from the trial courts." *Chevron U.S.A. Inc. v. Smith*, 844 So. 2d 1145, 1148 (¶11) (Miss. 2002). Poplar Springs conceded in briefing and before the chancery court to receiving the 2011 letter. The 2011 letter expressly built upon the conclusion of the 2009 letter, stating that "[i]n regards to the *other adjustments* that were not revised, your thirty (30) day period to appeal has expired." (Emphasis added). These "other adjustments" referenced in the 2011 letter then explicitly refer to the 2009 letter.[2] As such, the time for Poplar Springs to have objected to this report

_____

[2] While the nursing home does briefly mention in its principal brief that it never received the 2009 letter, only in its reply brief does Poplar Springs expressly detail an argument of why it might not have received the 2009 letter. "This Court does not consider

9

would have been in 2011 when it arguably discovered that these "other adjustments" referenced the 2009 letter. The nursing center never appealed either the 2011 Audit Adjustments letter or the 2009 Audit Adjustments letter within the thirty-day time frame. As a result, the findings detailed in those letters are beyond the scope of administrative review.

¶24. The same conclusion was reached in a case including the Mississippi Division of Medicaid before our Supreme Court. *Alford*, 30 So. 3d at 1221 (¶30). There, prior to filing an application for Medicaid, a wife filed a petition in chancery court to increase certain disability benefits on behalf of her husband. *Id*. at 1213 (¶2). The Division of Medicaid contended that the wife never filed an application on behalf of her husband for Medicaid eligibility, and the couple had failed to exhaust their administrative remedies. *Id*. The chancery court found that it lacked the authority to grant relief under the relevant statute prior to the husband and wife exhausting their administrative remedies. *Id*. at 1214 (¶5). The wife appealed. *Id*.

¶25. Relying on Arkansas and Missouri caselaw to render its decision, the Supreme Court held that "where a remedy before an administrative agency is provided, relief must be sought by exhausting this remedy before the courts will act." *Id*. at 1221 (¶29) (internal quotation marks omitted) (quoting *Davis v. Barr*, 250 Miss. 54, 157 So. 2d 505, 507 (1963)).

---

issues raised for the first time in an appellant's reply brief." *Jenkins v. State*, 283 So. 3d 217, 221 (¶14) (Miss. Ct. App. 2019). In any event, our analysis centers on Poplar Springs' admitted receipt of the 2011 letter, which informed it of the 2009 rate adjustments. As set out amply above, Poplar Springs took no action in 2011 to raise these concerns.

Addressing the doctrine of administrative remedies in regard to the issue of jurisdiction, the Court acknowledged that "the courts cannot or will not determine a controversy involving a question which is within the jurisdiction of an administrative tribunal prior to the decision of that question by the administrative tribunal. . . ." *Id*. (quoting *Ill. Cent. R.R. Co. v. M.T. Reed Const. Co.*, 51 So. 2d 573, 575 (Miss. 1951)). Finally, the Supreme Court reiterated the need for administrative exhaustion, stating that the "rule requiring exhaustion of administrative remedies will be applied even though a party contends that the action of the administrative agency is beyond the power and jurisdiction of the agency." *Id*. at (¶30).

¶26.    Precedent makes clear that if there is an available remedy at the administrative level, an aggrieved party is required to exhaust its administrative remedies before seeking judicial relief. Poplar Springs had thirty days to seek administrative review after receipt of the letters. It chose not to, and as a result, its time to appeal has passed. It did not take action at either point, and at this late date Poplar Springs cannot complain it was deprived of due process. *See Williams v. Est. of Winding (In re Last Will & Testament of Winding)*, 783 So. 2d 707, 711 (¶15) (Miss. 2001) ("[E]quity aids the vigilant and not those who slumber on their rights."); *see, e.g.*, *Hudnall v. Miss. Dep't of Emp. Sec.*, 324 So. 3d 1201, 1203 (¶11) (Miss. Ct. App. 2021) ("[I]f the notice of appeal is not timely filed, the appellate court simply does not have jurisdiction."); *Arrington v. Miss. State Bd. of Dental Examiners*, 266 So. 3d 627, 630 (¶7) (Miss. 2019) ("[T]o vest the chancery court with appellate jurisdiction, the notice of appeal must be filed within thirty days," and when it was not, there is no jurisdiction);

11

*Cromwell v. Miss. Dep't of Emp. Sec.*, 87 So. 3d 476, 476-77 (¶5) (Miss. Ct. App. 2011) ("Timely notice of appeal is jurisdictional"). Therefore we affirm the chancery court's ruling that it lacked subject matter jurisdiction to hear the matter.

## CONCLUSION

¶27.    Since Poplar Springs did not seek review of the 2009 or 2011 letters within thirty days, they are time-barred. Therefore we find that the chancery court lacked subject matter jurisdiction because Poplar Springs failed to exhaust its administrative remedies before seeking review by the chancery court.

¶28.    **AFFIRMED.**

**BARNES, C.J., CARLTON AND WILSON, P.JJ., GREENLEE, WESTBROOKS, McDONALD, LAWRENCE AND SMITH, JJ., CONCUR. EMFINGER, J., NOT PARTICIPATING.**